UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 2:20-cv-08299-SB-AS<br>8:21-cv-01212-SB-AS | Date: | 1/26/2022 |
| Title: | *Michael Gonzales et al. v. Charter Communications, LLC* | | |

| | |
|---|---|
| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |

| Jennifer Graciano | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **[In Chambers] ORDER RE: DEFENDANT'S MOTION FOR SANCTIONS AND CONTEMPT ORDER [Dkt. No. 111]**

     On January 7, 2022, the Court held a hearing on Defendant Charter Communications, LLC's Motion for Sanctions and Contempt Order. Dkt. No. 111. Plaintiffs Michael Gonzales and Artur Kosinski filed an opposition, Dkt. No. 114, and Defendant timely replied, Dkt. No. 118. For the reasons stated below, Defendant's motion is **GRANTED in part and DENIED in part**.

## I.     BACKGROUND

     Plaintiffs work for Defendant as maintenance technicians, subject to Defendant's "On-Call Policy" that required Plaintiffs to be "on call" for a 24-hour period according to a rotating schedule every four to five weeks. SAC, Dkt. No. 77, ¶¶ 14–16. As part of the On-Call Policy, Defendant allegedly subjected Plaintiffs to "numerous unreasonable and excessive restrictions," including restrictions on "accessibility via cell phone; uniform requirements, physical/mental condition requirements[, and] response time and reporting time." *Id.* ¶ 19. Plaintiffs claim that they were "effectively anchored" to their company-owned

vehicles for the duration of their on-call period because they were required to report to their work site in their "bucket trucks," *id*. ¶ 33, and were required to perform daily maintenance and safety checks on the bucket trucks, regardless of whether they worked that day, *id*. ¶¶ 36–38.

Plaintiffs commenced this action on April 17, 2020 in the Northern District of California, alleging wage and hour violations under the Fair Labor Standards Act (FLSA) and California Labor Code.  On July 2, 2020 Defendant filed a motion to transfer venue.  Dkt. No. 25.  On August 24, 2020, Judge Edward Chen granted Defendant's motion, finding that the case was filed in the Northern District "as a result of forum shopping" and it was "plainly obvious" that this action was "more properly venued" in the Central District.  Dkt. No. 45, at 3, 7.  The case was transferred to this district on September 10, 2020.  Dkt. No. 47.[1]

On December 4, 2020, the Court granted Plaintiffs' motion for conditional certification of an FLSA collective.  Dkt. No. 76.  The Court subsequently approved the parties' stipulated notice process for the FLSA collective on January 5, 2021.  Notice Order, Dkt. No. 85.  The Notice Order provided that the class administrator, CPT Group, Inc. (CPT), would send notice to potential class members via first class mail and text messages.  Potential class members would have sixty days to opt-in, either by (1) completing the opt-in form and sending it by mail, email, or fax or (2) completing an online submission through the official case webpage established by the class administrator.  *Id*. at 2.  The class administrator would then provide both parties' counsel the names and contact information of those who opted in.  *Id*.  The parties' stipulation included the specific notice form that would be sent via first-class mail, Dkt. No. 84-1, and text message, Dkt. No. 84-2.

On January 21, 2021, as part of the notice and discovery process, the parties stipulated to a protective order that designated as confidential (1) the "personally identifying information regarding Defendant's employees" and (2) Defendant's internal policies, including the On-Call and Motor Vehicle policies.  Protective Order, Dkt. No. 89, ¶ 1.B.  Like almost all such orders, the Protective Order included a provision explaining that its scope extended to "any information copied or extracted from" the protected material:

---

[1] After this case was transferred, the Court granted Defendant's motion to compel arbitration as to 15 former plaintiffs.  Dkt. No. 66.

> The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

*Id*. ¶ 3.  The Protective Order also contained a typical provision limiting Plaintiffs' use of confidential information, stating that such information may be used "only for prosecuting, defending, or attempting to settle this Action."  *Id*. ¶ 7.1.

On January 26, 2021, Defendant produced a list of potential class members, labeled as "proprietary and confidential data," to the class administrator via a secure, password-protected link.  Ozmer Decl., Dkt. No. 111-1, ¶ 4.  Of those class members who returned consent forms, seven were not on the list that Defendant had provided to the class administrator.  *Id*. ¶ 5.  Defendant later discovered, during Plaintiff Gonzales's deposition, that Gonzales purportedly posted on Facebook the opt-in website link that he had received.  Gonzales Dep., Dkt. No. 111-3, at 17:4–20.

Plaintiffs' counsel have recently filed two additional wage and hour class action lawsuits against Defendant, one in this district and one in the Western District of Wisconsin.  *Moore v. Charter Commc'ns LLC*, NO. 3:21-cv-00438 (W.D. Wisc. July 6, 2021); *Freeze v. Charter Commc'ns LLC*, No. 8:21-cv-01212 (C.D. Cal. July 16, 2021).  The named plaintiffs in both actions have opted into this case, and Plaintiffs' counsel confirm that the plaintiffs for these additional suits were obtained by using the opt-in consent list.  Karakalos Decl., Dkt. No. 114-1, ¶¶ 8-11; Opp. at 6–7; Ozmer Decl. ¶¶ 10–11.  Both cases rely on the same basic facts asserted in this lawsuit, but seek class relief under the wage and hour laws of additional or different states.  *Moore* Compl., Dkt. No. 111-4 (Connecticut, Florida, Kentucky, Massachusetts, Michigan, Missouri, Montana, New York, North Carolina, Ohio, and Wisconsin); *Freeze* Compl., Dkt. No. 111-5 (California and Texas).  In fact, on November 29, 2021, the Court issued an Order to Show Cause in this case and *Freeze* as to why the two related cases should not be consolidated or, in the alternative, *Freeze* should be stayed pending resolution of

this litigation.[2] Dkt. No. 110. Further, the complaints filed in *Moore* and *Freeze* include some new facts drawn directly from Defendant's On-Call and Motor Vehicle policies, including factual allegations that directly quote the policies subject to the Protective Order in this case. *See, e.g.*, *Freeze* Compl. ¶ 12(d) (quoting the On-Call Policy); *Moore* Compl. ¶ 22(l) (quoting the Motor Vehicle Policy).

Defendant claims that Gonzales and Plaintiffs' counsel committed several violations of the FLSA notice process and the Court's Protective Order and now moves the Court to hold Plaintiff and his counsel in civil contempt and impose the following sanctions:

1. Order Plaintiffs' counsel to dismiss the *Moore* and *Freeze* lawsuits;
2. Order Plaintiffs' counsel to pay Defendant's attorney's fees and costs incurred in defending the duplicative lawsuits;
3. Disqualify Plaintiffs' counsel from representing, in any other action, any person who returned an opt-in form in this litigation;
4. Order Gonzales to produce all social media postings and any other communications he has made, and any responses he has received, regarding this lawsuit;
5. Order that any future violations of the Protective Order will result in terminating sanctions; and
6. Order Gonzales and Plaintiffs' counsel, jointly and severally, to pay Defendant's attorney's fees and costs in bringing this motion.

Motion at 19–20.[3]

---

[2] Both parties have filed responses; Defendant requests to stay *Freeze*, Dkt. No. 113, while Plaintiffs request that the cases be consolidated with trial continued from May 2022 to the spring of 2023, Dkt. No. 112.

[3] Plaintiffs argue that Defendant's motion is untimely and should have been filed before the Magistrate Judge, as it seeks discovery sanctions. Opp. at 17–18. The motion is properly before this Court, however, because Defendant also seeks an order of civil contempt that must be decided by a district judge. *See I.F. v. City of Vallejo*, No. 2:18-cv-0673-JAM-CKD, 2021 WL 601054, at *9 (E.D. Cal. Feb. 16, 2021) (noting "that the most [a magistrate judge] can do as far as contempt is

## II.     LEGAL STANDARDS

### A.     Rule 37 Sanctions

"[T]he Ninth Circuit has repeatedly held that Rule 37 'provides comprehensively for enforcement of all discovery orders, including Rule 26(c) protective orders.'" *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014) (cleaned up) (quoting *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 935 (9th Cir. 1993)). "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). A sanction of dismissal, however, usually requires improper conduct that was "due to willfulness, bad faith, or fault of the party." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006) (emphasis and internal quotation marks omitted) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). Moreover, "[t]he inherent power of the Court extends beyond those powers specifically created by statute or rule, and encompasses the power to sanction misconduct by the attorneys or parties before the Court." *Lewis v. Ryan*, 261 F.R.D. 513, 519 (S.D. Cal. 2009). "Dismissal under a court's inherent powers is justified in extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's orders." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (citations omitted).

### B.     Civil Contempt

A court may find a party in civil contempt if "(1) [the party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A district court "has wide latitude in determining whether there has been a contemptuous def[ianc]e of its order." *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984)). The moving party must demonstrate

---

concerned is investigate whether further contempt proceedings are warranted and certify such facts to a district judge").

by clear and convincing evidence that the alleged contemnor violated "a specific and definite order of the court." Id. at 856 n.9. The burden then shifts to the opposing party to demonstrate that "they took every reasonable step to comply." Id. The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d at 695.

## III.   DISCUSSION

### A.   Plaintiffs' Counsel Violated the Protective Order.

Plaintiffs' counsel do not dispute that they used the information from the opt-in forms and Defendant's On-Call and Motor Vehicle policies when filing the additional lawsuits. Instead, they argue that their actions did not violate the Protective Order.

First, Plaintiffs' counsel argue that the they were permitted to use the information from the opt-in forms to solicit plaintiffs for other lawsuits because the opt-in forms themselves were not marked "confidential." Opp. at 9–11. They reason:

> Plaintiffs' counsel did not receive, and did not use, any document that was labelled by Charter as confidential. Only CPT received the information that Charter purportedly labelled as confidential. CPT then sent out the notices, and the recipients of the notices that wanted to join the suit opted in by generating opt-in consent forms which included their contact information. Those opt-in consent forms were not marked confidential by anyone.

Id. at 9.

But Plaintiffs' counsel knew that the opt-in forms derived from the confidential list Defendant provided to the class administrator. Karakalos Decl. ¶ 8 ("Charter had designated its production to CPT as confidential."). Despite this knowledge, counsel deliberately used the opt-in forms for the admitted purpose of identifying new plaintiffs to file more lawsuits. These actions violate the terms of the Protective Order. The Protective Order encompassed "information copied or extracted from" the protected material and prohibited Plaintiffs from using it for any purpose outside this litigation. Protective Order ¶ 3. "It is plainly disingenuous to argue that information *derived* from materials disclosed during

discovery somehow escapes the grasp of the protective order." *Balschmiter v. TD Auto Fin. LLC*, No. 13-CV-1186-JPS, 2015 WL 2451853, at *4 (E.D. Wis. May 21, 2015); *see also In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 2491937, at *3 (N.D. Cal. June 14, 2019) (finding counsel violated a protective order when he quoted "not . . . from Protected Material, but rather related information derived from Protected Material").

Plaintiffs' counsel acknowledged at the hearing that they used the information from the opt-in forms to solicit clients for new litigation. Counsel argue, however, that they did not solicit "new" clients because the opt-in plaintiffs had become existing clients upon consenting to join this litigation. Opp. at 12. But the opt-in plaintiffs consented to pursue their claims against Defendant in *this* litigation before Plaintiffs' counsel contacted them, and counsel violated the Protective Order when they used the list of opt-in plaintiffs to solicit plaintiffs for *other* litigation against Defendant. See *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2017 WL 3782101, at *5 (N.D. Cal. Aug. 31, 2017) (finding that counsel violated the protective order by "attempt[ing] to solicit Class Members as clients in separate arbitration proceedings that would be initiated outside of *this* litigation").

Accordingly, Plaintiffs' counsel used confidential information for a purpose other than prosecuting this action and therefore violated the Protective Order and abused the FLSA notice process.

Second, counsel contends that they did not violate the Protective Order when using Defendant's On-Call and Motor Vehicle policies to draft the *Moore* and *Freeze* complaints because (1) "there are no allegations or references" to the policies "that hadn't been previously alleged in the initial complaint in this action" and (2) the policies were previously filed as exhibits to Plaintiffs' motion for conditional certification of the FLSA collective. Opp. at 12. Both arguments fail. The *Moore* and *Freeze* complaints clearly include information not found in the initial complaint in this case. The main underlying facts are the same, but the *Moore* and *Freeze* complaints quote language from the policies that was not included in the initial complaint filed in this case, or even the Second Amended Complaint filed in December 2020, prior to the Protective Order. *See, e.g.*, Freeze Compl. ¶ 12(d); *Moore* Compl. ¶ 22(l). Plaintiffs also argue that because they had publicly filed the policies as exhibits in support of their motion for conditional certification prior to the Protective Order, the policies were not confidential. Opp. at 12. But the fact that the policies were previously disclosed did not allow counsel to ignore the subsequent designation in the Protective Order. To the extent

that Plaintiffs' counsel believed the policies could not be designated confidential in light of their prior publication, they were required to challenge the designation. Protective Order ¶ 6. Under the express terms of the Protective Order, Plaintiffs' counsel could not take it upon themselves to publish the contents of the policies even if they had followed the required procedure and challenged the designation:

> Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

Id.; see also Harmston v. City of San Francisco, No. C 07-01186SI, 2007 WL 3306526, at *5–6 (N.D. Cal. Nov. 6, 2007) (imposing sanctions because even if plaintiff's counsel was correct that the confidential designation was improper, "[i]nstead of following the procedures laid out in the protective order, [counsel] evidently decided . . . they could ignore the order without bringing the proper challenge to this Court"). Accordingly, Plaintiffs' counsel violated the Protective Order by using the policies outside of this action.

### B. Appropriate Sanctions Against Plaintiffs' Counsel Are Warranted.

Defendant moves the Court to sanction Plaintiffs' counsel by ordering counsel to: (1) dismiss the *Moore* and *Freeze* lawsuits; (2) pay Defendant's attorney's fees and costs in defending the duplicative lawsuits; and (3) pay Defendant's fees and costs in bringing this motion. Defendant also asks the Court to find Plaintiffs' counsel in civil contempt and to disqualify them from representing in any other case a client obtained from the opt-in form in this case.

The Court finds that Plaintiffs' counsel have acted in bad faith, and that their conduct warrants sanctions. Counsel cannot "rely upon the litigation process on an existing FLSA claim as a means to solicit new clients to act as potential class representatives on unpled class action claims." Gonzalez v. Diamond Resorts Int'l Mktg., Inc., No. 2:18-cv-00979-APG-NJK, 2020 WL 4925702, at *6 (D. Nev. Aug. 21, 2020) (denying the plaintiffs' motion to amend and add new class representatives found through abuse of the discovery process). Although dismissal as a sanction is justified only in "extreme circumstances," counsel's actions represent an "abusive litigation practice[]" that justifies dismissal of the *Freeze*

action pending before this Court.[4] *Halaco Eng'g*, 843 F.2d at 380 (9th Cir. 1988). The Protective Order plainly prohibited counsel from using protected material—or anything extracted from it—for any purpose other than prosecuting this case. Counsel admits that they used the information from the opt-in forms to file duplicative lawsuits, and their justification for doing so is itself troubling. It is not reasonable to believe that the Protective Order authorized them to use confidential information derived from protected material. *See Balschmiter*, 2015 WL 2451853, at *4. Dismissing an action that is the product of an abuse of process is warranted here. Requiring Plaintiffs' counsel to pay Defendant's reasonable attorney's fees and costs in defending the *Freeze* action and bringing this motion is similarly justified. *See Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-cv-0628-TWR-AGS, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021) (recommending an award of attorney's fees and costs incurred in bringing the sanctions motion and defending the additional case); *Burda v. Fid. Nat'l Mgmt. Servs., LLC*, No. SACV 11-00247-JVS (MLGx), 2013 WL 11042668, at *4 (C.D. Cal. Mar. 25, 2013) (awarding attorney's fees and costs incurred in bringing a sanctions motion).

No further remedy is necessary. A court may enforce its lawful orders through its civil contempt powers. *See Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984) ("A court has wide latitude in determining whether there has been contemptuous defiance of its order."). Though the Court has concluded that counsel violated the protective order based on an unreasonable interpretation of its scope, it declines to hold counsel in civil attempt. The other sanctions imposed are sufficient "to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior," *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986), and an additional finding of contempt is unnecessary.

The Court also declines to disqualify Plaintiffs' counsel from representing in any other action a person who returned an opt-in form in this litigation. A request for disqualification raises complex questions that requires the weighing of different interests, including "a conflict between a client's right to his or her attorney of choice and the need to maintain ethical standards of professional responsibility."

---

[4] The Court ordered and received supplemental briefs addressing the question whether it had authority to dismiss *Moore*, a case pending before another court. Dkt. Nos. 131, 132. This Court has serious questions about the propriety of its ordering counsel to dismiss the *Moore* action pending elsewhere and declines to do so.

*Burda*, 2013 WL 11042668, at *2. The requested disqualification is further complicated in this case by the fact that Plaintiffs' counsel represent the plaintiffs in *Moore*, a case pending in another court. Considering all relevant circumstances, the Court will not issue the broad disqualification order requested by Defendant.

### C. Sanctions Against Plaintiff Gonzales Are Not Warranted.

Defendant has raised troubling questions about whether Gonzales violated the Notice Order, based on his admission at his deposition that he shared the opt-in link on Facebook. But the facts surrounding Gonzales's actions are not clear.[5] Nor does the record clearly state the impact, if any, of the alleged abuse. Defendant identified seven individuals who were not on the list that it provided to the class administrator, but the record does not suggest that these individuals were included in the FLSA collective. Thus, to the extent Gonzales may have taken actions that exceeded the notice permitted in the Notice Order, Defendant has not shown that they had any harmful effect. It appears that the class only includes those who received official notice. Accordingly, on this record, the Court declines to impose sanctions for Gonzales's conduct or hold him in civil contempt.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED in part and DENIED in part**. **IT IS HEREBY ORDERED** that:

1. The *Freeze* action is dismissed without prejudice to the *Freeze* plaintiffs refiling their claims with separate, unaffiliated counsel.

2. Plaintiffs' counsel are required to pay Defendant's reasonable attorney's fees and costs in filing this motion and defending the *Freeze* action. The parties are to meet and confer in person or by videoconference to see if they can agree on a reasonable amount of

---

[5] Plaintiffs do not dispute Gonzales's statement at his deposition, but argue that, based on screenshots of Facebook posts submitted with their opposition, he did not in fact post the link. Opp. at 5–6; Dkt. No. 114-7. Defendant argues in reply that Gonzales's Facebook posts should have been produced in response to Defendant's interrogatories, but it is not clear that the interrogatories plainly requested these Facebook posts. Reply at 11–12; Dkt. No. 118-2 (Defendant's interrogatories).

fees and costs. If they are unable to do so, **by no later than February 9, 2022**, Defendant shall submit an application and proposed order for attorney's fees and costs. Such application must set forth sufficient detail of the fees and costs Defendant incurred in bringing this motion and defending the *Freeze* action and include any necessary documents supporting a reasonable request for attorney's fees and costs. If Plaintiffs' counsel wish to challenge the amount that Defendant requests, they must do so **by no later than seven days after Defendant files its motion**.